The next case today is Joseph B. Shea v. Peter Millett, Appeal No. 21-1044. Attorney Suny, please take the podium and introduce yourself for the record and proceed with your argument. Good morning. May it please the Court, David Suny for Plaintiff Appellant Joseph B. Shea. With the Court's permission, we would request three minutes of rebuttal. You may have it. Thank you, Your Honor. I'd like to start the argument with a quotation from Justice Breyer who, sitting for this Court in 1983, deciding a Massachusetts statute of frauds case that is particularly on point, stated the statute of frauds is not the tax code. He went on to quote Corbin on contracts to say that we should always be satisfied with some note or memo that is adequate when considered with the admitted facts, the surrounding circumstances and all explanatory and corroborative and rebutting evidence to convince the Court that there is no serious possibility of consummating a fraud by enforcement. That is precisely the case that we have here today. No less than three occasions at his deposition, Dr. Millett admitted that he had an oral agreement with Mr. Shea to pay him 10% of all royalties that he would receive if they were later successful in getting a royalty agreement with Arthrex for the life of the contract. That's not quite the way he put it. He said for the life of the original contract, didn't he? In other words, we have an original contract which by its terms expired. No. Well, it got extended by a separate agreement. It would have expired but for a new agreement that was entered into. So, Your Honor, that's a factual inference that needs to be drawn in Mr. Shea's favor. Take the original contract, didn't it have a term? It had an initial term and it had self-extensions, yes, or not self-extensions, extensions by mutual agreement. And that's true with every contract entered into pretty much in the world, that they can be extended by mutual agreement. At the time that the parties entered into the agreement, they did not know how much Mr. Shea would be paid or Dr. Millett would be paid. They did not know what the terms would be. But that wasn't my question. You have a contract. It has a term. It can be extended by mutual agreement but that's true of virtually every contract. The admission goes to the original contract with the original term, doesn't it? Let me put it this way. Is there anything you would point us to in the record where Dr. Millett has admitted that your client would be entitled to royalties if a new or extended contract was entered into? He has denied that because that's in his self-interest. So you don't have admission on that essential point. What do we do about that under the statute of frauds? Sure. I think the answer is respectfully. I think it's pretty straightforward. At the time the parties entered into the oral agreement, they did not know what the terms of the royalty agreement would be. The oral agreement that was admitted, again, happened before the royalty contract. When Dr. Millett described the agreement with Mr. Shea, he did not know if there would be an extension clause in the royalty contract or not, but what he admitted is that Mr. Shea would be entitled to 10% of royalties during the contract. And so then you have Arthrex that comes in and confirms that the contract, in fact, was not terminated and extended. Now I should note, if my argument's a little bit obtuse, there's a confidentiality order in place that restricts me from referencing certain facts, but I think if the court looks at the unredacted briefs, it will be clear what's happening here. Counsel, like Judge Kayotta, I'm having a little trouble with the argument. I thought when you opened with what Justice Breyer said, that you were going to point us to specific writing. I take it that is not your argument. We have a specific writing in the context of the mutual settlement agreement and release that Dr. Millett sent, but we also, importantly, and we've cited this in our brief, have depositioned admissions by Mr. Millett. He was very forthright in admitting it. The part that can get a little bit confusing about the case... Let me stop you there, Judge. You started with deposition testimony. It's not quite clear to me that that's what Justice Breyer meant, but then Judge Kayotta asked you about that deposition testimony and it dissolved. Let's put that to the side. What document are you relying on? In addition to that, we have the settlement agreement, the mutual settlement agreement and release, which is at addendum, page 49 of the brief. We also have a document which constitutes an admission. It's Dr. Millett's corporate minutes that says that he has an oral agreement with Mr. Shea and he just needs to formalize it. We're trying to focus in on, let's assume we agree with you that there is enough here to allow a finding that was an agreement. The problem is, what is there that gets you over the statute of frauds that there was not only an agreement, but that it was more than the 2010 agreement? You don't need to have certainty as to all terms. We're talking about a pretty essential term when we talk about duration and whether a whole new contract would be covered. What we have is both the admissions as well as the mutual settlement and release at page 49. What in the settlement and release constitutes an admission that Dr. Millett was on the hook for not the 2010 agreement, but the new one? If I could just clarify, and I'll get to your question in a second, this is not a new agreement. This is an extension of the existing agreement. It's the same contract. Contracts can have early termination provisions. This contract went retroactive. Dr. Millett paid retroactively. It's important to note that as a distinction. On page 49 of the addendum, it says that Mr. Shea essentially will be paid upon a previously agreed formula of 10% of the net royalty payments that are paid quarterly by Arthrex for a contract which was negotiated with the assistance of Mr. Shea in August 2010. That's a settlement proposal? We don't agree that that's a settlement proposal. They have captioned it as a mutual settlement release under the authorities that we cite. I think it's pretty clear this was done three years before the litigation was commenced and there was no dispute whatsoever from Mr. Shea's perspective. I think the laws is pretty favorable to Mr. Shea on that as well as the writing here. And what in that carries over? Did your client play any role in negotiating the extension? No. No. Arthrex was aware of his involvement, but he did not negotiate the contract. The contract ended up getting negotiated directly with... I wasn't asking about negotiation. I asked if he played any role at all. Well, he was brought in by Dr. Millett. In the extension? In his own... No. No. No. The extension happened... The Arthrex testimony was essentially that it was a formality. They don't enter into new contracts, that it was a continuation of the existing contract. I think you have to look at the facts in the light most favorable to Mr. Shea on these points. We did file a separate partial motion for summary judgment. I think the record is strong enough that we could have prevailed, but we decided not to appeal that. I think if you interpret the facts in the light most favorable to Mr. Shea, which respectfully Judge Barrows just did not do, she disregarded the admissions and the deposition. She didn't interpret the contract correctly. Again, at the time they entered into the contract, it was a contract to agree about a future contract, just like the Coughlin case, the SJC case in 1936 that we cite. I see that I'm past three minutes, so I'll pause here and reserve two minutes for 40 seconds. Yes. Thank you, counsel. At this time, please, Attorney Davis, please take the podium and introduce yourself on May it please the court. Joseph Davis, Greenberg Tribe on behalf of Dr. Peter Millett, I really feel compelled to say something before we get started. It is such a pleasure and relief to be in live court again in front of this distinguished panel. I'm sorry we're not in San Juan, but other than that, I have to say that at least this practitioner will never again take for granted the privilege, the distinct privilege of appearing in court live as it was intended to be. Although Judge Lynch, I'm sorry you're not here today in person, but it is good to see your face. Your Honor, I don't want to, I'm going to need, thank you. I don't want to repeat the argument that we've got in our opposition brief. I think it's well organized and it addresses the significant points in the case. What I would like to do is to take a moment, however, to focus on some of the issues raised in the reply brief really for the first time is obviously we have not had a chance to brief those. First, Your Honor, I want to start with the fundamental proposition that is noted on page three of the reply brief in which plaintiff argues that the central issue on appeal is whether an exception to the statute of frauds exists. Put it to the court, two things. One, that is the first time that argument was ever raised in this case. It was not in the plaintiff's motion for partial summary judgment. It was not in the defendant's motion for summary judgment. It was not in the statement of issues on appeal and it was not in the opening brief. Instead, it is raised presumably to try to get around the problem that Judge Cauda, you raised earlier in the questioning and as did you, Judge Lynch, which is to say where is the compliance with the statute of frauds. There is no such exception to the statute of frauds when there seems to be some sort of a wink and a nod agreement that the parties have already been living up to. The statute of frauds have been in place in Massachusetts for a very long time and the significance of them is so material to the law of contracts here that the general court in 1985 adopted a second provision in addition to section one-fifth, adopted section seven that is relevant here governing the necessity of a written contractor when a broker or a finder is engaged in services. Do you dispute the contention that if a party who is being charged with liability under the contract admits that the parties made an oral agreement that that can get around the statute, that satisfies the statute? I do disagree with the proposition that that gets around the statute of frauds. It is since 1864. And what is your authority for saying that a flat-out admission, you know, you and I have an oral agreement, I sue you, you say statute of frauds, but then you also say, by the way, we did have precisely that agreement. You would say the statute still keeps me from recovering. Well, your question presupposes that all the material terms of the agreement were reached, which is not the case here. I am presupposing that, yes, that all, you know, you admit we had an agreement just the way I described it, but you say, ha-ha, we never signed it in writing. Is that a valid defense under Massachusetts law? Since Marcy v. Marcy in 1864, the Massachusetts courts have held that partial performance and even full performance by a party does not obviate the necessity to comply with the statute of frauds. I put it to the court that the proposition that you are putting forth would be unlikely – it would be unlikely for us to be before you today if that was in fact the case. In other words, all of the material terms would have to be agreed upon in order for there to be an enforceable oral contract. I take it your position is that we don't have to test the accuracy of Judge Keada's proposition to decide this case? Yes, Your Honor. I also don't think that Judge Keada's proposition is consistent with the writings in, excuse me, with the record in the case. Well, that's a whole separate issue. I'm still a little confused as to whether you agree that if the defendant admits that the contract is exactly as described with all its material terms, is that enough to satisfy or get around the statute? I'm unaware of any Massachusetts case that has so helped. Are you aware of any that has rejected it, given what Justice Breyer said in the opinion quoted to us? Of course, that's a statewide issue, isn't it? It's strictly a statewide issue. I mean, I have great respect for Justice Breyer. I think I argued one of his last cases in the First Circuit before he went to Washington. I don't think his statement really applies to the facts or the law in this case. I thought Judge Burroughs did a thorough job of walking through the purposes behind Section 7 of the Statute of Frauds and Section 1 5th of the Statute of Frauds and the entire purpose of the Statute of Frauds, which is to avoid the problem we have here today where the parties did have agreement as to certain things. Certainly there was an agreement by my client to pay 10 percent of royalties for some period of time, which he then did for his own reasons, and the record is replete as to what those reasons were. One, because it was his understanding that the agreement required the plaintiff to perform ongoing services of finding other business opportunities, which never happened, but also out of friendship, ironically, given the current state of affairs where clearly the word friendship would not be used between the parties anymore. But at the time, because of the difficulties that the plaintiff was undergoing, Dr. Millett decided to pay him, which he did, and at some point ceased paying him when he could not reach an agreement as to when they would cease. As I understand it, the other side has a two-step argument. One is between the document referred to by one or both sides as a settlement proposal, and if you assume that it's not a settlement proposal, and between the admission at the deposition, there was enough to say that there was an enforceable agreement to pay for the it was just the 2010 initial five-year term or whether it was the extended term. What's your response to that sort of multi-part argument? And I know your first response we've already talked about, which is whether an admission is sufficient or not. Let's assume that it is, preserving your position. What about the second part, which is, is the admission sufficient? Well, Your Honor, let me take that into two parts. As a practitioner, I am uncomfortable with the notion that a draft settlement agreement is somehow admissible because the parties hadn't initiated litigation yet. Much of my work is spent trying to avoid the necessity of ultimately ending up before this August body. And the purposes behind Rule 408 have always been to try to encourage the parties to try all things by engaging in settlement talks and exchanging information. That having been said, the writing in question doesn't explain any of the terms other than the 10% issue. So you still have the problem of where is the writing that expresses all of the terms, number one. And number two, was it signed by the party to be charged, which is to say Dr. Millett. All of the writings that have been identified by plaintiff in his various briefs and in the briefs before here and in the record itself failed to address writings prepared by Dr. Millett that would express what Dr. Millett viewed to be thus the material elements of the contract. Instead, the email exchanges in 2010 failed to identify any obligations of the plaintiff, none at all, and do not address the questions to when they end. And in fact, the email exchange ends with my client saying, is this going to go on forever? You have the minutes of the meeting of my client's LLC, of which Mr. Shea was certainly not a party to those, didn't review them, and it doesn't say anything anyway other than we need to formalize this in writing, which is the whole point of the problem we have. And of course, there's the settlement agreement itself, which does not go over the terms other than acknowledging that he had had an agreement to pay 10%. So there is no writing that satisfies the necessities. And to go one step farther, Your Honor, I know there is a bright young clerk sitting somewhere behind me who's going to be pouring through the record here, so I will give he or she some help. If we want to talk admissions, the number of admissions from the plaintiff that there is no writing is voluminous. It's almost overwhelming. What about the admission by your client they point to in the deposition testimony? How should we consider that? My client certainly was under the impression that he had reached an oral understanding to make payments, which he then made. So they do exist. It is one, it is a, if you will, partial agreement on the terms of what a contract would have been. Counsel, let me ask you, for purpose of statute of frauds under Massachusetts law, you can not necessarily have one document. You're able to piece, if there's a series of documents, you can piece them together and that can do away with the statute of frauds issue, but analogously, can't you piece whatever documents you have with the admissions and anything else in writing and wouldn't that cure the statute of frauds issue? No, Your Honor. The writings would. If the writings memorialized all of the material terms of the party's agreement, then yes, that would constitute, when read in totality, signed by the party to be charged, which is to say some expression from the party to be charged. Those are in fact the material terms, then yes, that would do it. But to go beyond into further oral understandings defeats the purpose of the statute of frauds. I think Judge Callada had been asking that question. We're talking about three admissions. This is not like testimony that could go either way. When it's an admission, it's an admission. Wouldn't that, you know, and when you informed the SJC has not ruled on that specific point or what an admission would do with a statute of frauds? There's no case law on that? Your Honor, I put it to the court that the admissions that have been represented here are not admissions of all the material terms of the contract. They're admissions of an agreement as to certain elements of the contract. Remember, the contract was reached in a 10 to 15 minute conversation at a bar in New Orleans. So it's not as if this was in some complex meeting which the parties were in a state where they walked through all the terms. They had a quick discussion about certain things that could be done and that has ultimately led to us being here. Problem that would have been avoided had the agreement been in writing and frankly had one of them walked into a lawyer's office at the time. But obviously neither of them did as they had the right not to do. Thank you. Anything further, Mr. Davis? Your Honor, I can continue if you would like, but frankly I'd rather answer your questions and address your concerns because I do think that the materials are well briefed. Let me ask my colleagues whether they have any further questions. There's a claim that there's roughly $19,000 in royalties that weren't paid applicable to the 2010 agreement. I've always thought of that, Your Honor. That's never been particularly well explained in the record, if you will. I've always viewed that as some sort of a dispute as to when the last payment was sent. But there is nothing in the record that explains what that $19,000 is. My client has always been under the view that 10% of all the royalties was paid up until the moment that the 2010 agreement expired. Okay. Thank you, counsel. Thank you, Your Honor. Thank you, Attorney David. Attorney Suny, if you could please take the podium and reintroduce yourself on the record for the in your remote. Thank you. May it please the Court, David Suny for Joseph Bichet. Respectfully to Mr. Davis's legal position, there are very clear authorities that apply here. S.A.R. Group, 79 Massap Court 112, 2011, quote, ambiguous terms can be clarified and supplemented through a course of performance of a contract even without explicit incorporation. Well settled, Massachusetts law. Is that a Section 7 case? That is a Section 7 case, Your Honor. Thank you. There was no performance under the renewed or extended, whatever you call it, contract. All the performance was under the original 2010 agreement. Well, so just to clarify, the royalty agreement is a separate contract. If the Court looks at Coughlin, the 1936 SJC case, it will see that there were two contracts involved in Coughlin, just as there were here. The initial contract in Coughlin was, hey, let's go get a deal with, it's almost directly on point and no reason to think it's not good law, let's go get a deal with this other entity pursuant to another contract to be entered into. The parties say, yes, great oral contract. The fact that the later contract ended up being for a term of years involved other terms that helped define the original contract did not violate the statute of frauds. And I think this is dispositive of this case once Attorney Davis admits that there was an oral agreement, particularly in light of the SAR case that I just cited. In addition, Hubbard v. Pears, 24 Mass. App. Court, 1987, talks about admissions, just to go back to the admissions issue, talks about admissions and the Court says they might be thought to serve in lieu of any writing that the statute could conceivably require. We also cite, respectfully, a large number of cases, some of which are outside of the jurisdiction in our reply brief, that essentially say admissions are very good substitutes because the purpose of the statute of frauds is to prevent fraud or mismatch memories. We don't have a fraud here, we have a contract that's been admitted. I can't imagine a case where, if this case doesn't qualify for an exception to the statute of frauds, I'm not sure that I could envision facts that better. Let me ask you, counsel, when you talk about the admissions again, would that be analogous to an admission in an answer and therefore the defense is waived? You would say that deposition testimony, as part of the discovery, waived the statute of frauds issue? Absolutely, yes. For sure. I mean, it's not, we're trying to get to the ultimate truth of the matter as the Court is well aware in any litigation. Thank you. We appreciate your time. Thank you. That concludes argument in this case.